1  MICHAEL N. FEUER, City Attorney
2  KATHLEEN A. KENEALY, Chief Assistant City Attorney (SBN 212289)
   SCOTT MARCUS, Senior Assistant City Attorney (SBN 184980)
3  GABRIEL S. DERMER, Assistant City Attorney (SBN 229424)
   JEFFREY L. GOSS, Deputy City Attorney (SBN 178597)
4  200 North Main Street, City Hall East, 6th Floor
5  Los Angeles, California 90012
   Telephone:  213-978-7564
6  Facsimile:  213-978-7011
   Email:      jeffrey.goss@lacity.org
7
8  Attorneys for Defendant
   CITY OF LOS ANGELES (also erroneously sued
9  as Los Angeles Department of Transportation)

10              UNITED STATES DISTRICT COURT
11             CENTRAL DISTRICT OF CALIFORNIA
12
   | JUSTIN SANCHEZ, *et al.*, | No. 2:20-cv-05044-DMG (AFMx) |
13 |                            |                              |
   |          Plaintiff,        | *The Hon. Dolly M. Gee*      |
14 |                            |                              |
   |            v.              | **DEFENDANTS CITY OF LOS ANGELES** |
15 | CITY OF LOS ANGELES, *et al.*, | **AND LOS ANGELES DEPARTMENT OF** |
16 |                            | **TRANSPORTATION'S NOTICE OF** |
   |          Defendants.       | **MOTION AND MOTION TO DISMISS** |
17 |                            | **PURSUANT TO FED. R. CIV. PROC.** |
18 |                            | **12(b)(6); MEMORANDUM OF POINTS** |
   |                            | **AND AUTHORITIES** |
19 |                            |                              |
20 |                            | Complaint filed:  June 8, 2020 |
21 |                            |                              |
   |                            | **[Request for Judicial Notice; Declaration** |
22 |                            | **of Jeffrey L. Goss; and [Proposed] Order** |
   |                            | **filed Concurrently herewith]** |
23 |                            |                              |
24 |                            | **Hearing** |
   |                            | Date:        August 28, 2020 |
25 |                            | Time:        9:30 a.m. |
26 |                            | Location:    Courtroom 8C |
   |                            |              350 W. 1st Street |
27 |                            |              Los Angeles, CA 90012 |
28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Friday, August 28, 2020 at 8:30 a.m., or as soon thereafter as the matter may be heard in Courtroom 8C of the above titled Court, located at 350 West 1st Street, Los Angeles, California, 90012, Defendants City of Los Angeles ("the City") and the Los Angeles Department of Transportation[1] (collectively "Defendants") will and hereby do move to dismiss Plaintiffs Justin Sanchez and Eric Alejo's ("Plaintiffs") Complaint ("Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendants' Motion is brought on the grounds that the action should be dismissed as each of the claims asserted in the Complaint should be dismissed because the Complaint fails to adequately state any such claim.

The Defendants' Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice, Declaration of Jeffrey L. Goss, upon all the pleadings and papers that are on file in this action, and upon all oral and documentary evidence that may be presented at the time of the hearing on this Motion.  This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on July 23, 2020.

Dated:   July 31, 2020

MICHAEL N. FEUER, City Attorney
KATHLEEN A. KENEALY, Chief Assistant City Attorney
SCOTT MARCUS, Senior Assistant City Attorney
GABRIEL S. DERMER, Assistant City Attorney
JEFFREY L. GOSS, Deputy City Attorney


_____/s/ Jeffrey L. Goss_____
JEFFREY L. GOSS
Deputy City Attorney
Attorneys for Defendants

---

[1] As addressed in its memorandum of points and authorities, the City contends its Department of Transportation is erroneously named in this action.

**Table of Contents**

I.     INTRODUCTION ..................................................................................1

II.    STATEMENT OF RELEVANT FACTS .............................................2

    A.    The Invasion Of Dockless Mobility Devices .......................................2

    B.    The Need To Regulate The New Mobility Device Platform ...............2

    C.    LADOT's Shared Mobility Device Pilot Program ............................3

    D.    LADOT Creates Data Protection Principles To Safeguard Data
          Shared By Dockless Scooter Operators ...............................................4

III.   LEGAL STANDARD .........................................................................5

IV.    LEGAL ARGUMENT.........................................................................5

    A.    Dockless Scooter Regulations Fall Under The City's Police Powers..5

    B.    Plaintiffs' First And Second Claims Fail Because The City's
          Mobility Data Specification Does Not Violate Constitutional
          Rightd ..................................................................................................8

        1.    This dispute is analyzed under expectation of privacy.............8

        2.    Plaintiffs have no expectation of privacy with respect
            to the anonymized data at issue ...............................................11

    C.    Plaintiffs Third Claim Fails Because The California Electronic
          Communications Privacy Act Applies To Law Enforcement
          Activities And Plaintiffs Lack Standing To Pursue A Civil Action ..14

        1.    CalECPA is a criminal statute with its primary remedies
            related to the exclusion of evidence in criminal matters ........14

        2.    The plain language of CalECPA demonstrates that the
            Legislature intended there be no private right of action ..........16

    D.    Plaintiffs Improperly Name The Los Angeles Department Of
          Transportation As A Defendant In Their Action ...............................17

V.     CONCLUSION....................................................................................17

# Table of Authorities

## U.S. SUPREME COURT CASES

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007)................................5

*California v. Ciraolo*, 476 U.S. 207 (1986)......................................9

*City of Indianapolis v. Edmond*, 513 U.S. 32 (2000) ..............................9

*Florida v. Jimeno*, 500 U.S. 248, 250 (1991) .................................8

*Katz v. United States*, 389 U.S. 347, 351 (1967).............................8, 9

*Maryland v. Macon*, 472 U.S. 463 (1985) ...................................8

*New York v. Burger*, 482 U.S. 691 (1987) ..................................9

*NRLB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 20 (1937) .....................9

*Soldal v. Cook Cnty.* 506 U.S. 56 (1992)....................................8

*Tellabs, Inc. v. Motor Issues & Rights, Ltd*., 551 U.S. 308 (2007)...............11

*United States v. Jones*, 565 U.S. 400 (2012) ................................8

*United States v. Rutherford*, 442 U.S. 544 (1979)................................15

*Will v. Michigan Dept. of State Police,* 491 U.S. 58 (1989)....................17

## FEDERAL CASES

*Alexandre v. N.Y. City Taxi Limousine Comm'n*, 2007 U.S. Dist. LEXIS 73642 (S.D.N.Y. 2007)..................................................10

*Apt. Assoc. of Greater L.A. v. City of Los Angeles*, 2019 U.S. Dist. LEXIS 191234 (C.D. Cal. 2019)..................................................8

*Azam v. D.C. Taxicab Comm'n, 46 F. Supp. 3d. 38* (D.D.C. 2014) ....................10

*Bulgia v. New York City Taxi Limousine Comm'n*, 2007 U.S. Dist. LEXIS 94024 (S.D.N.Y. 2007)..................................................10

*Capp v. City of San Diego*, 940 F.3d 1046 (9th Cir. 2019) .......................8

*Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969 (9th Cir. 2004)...................5

*El-Nahal v. Yassky*, 993 F. Supp. 2d 460 (S.D.N.Y. 2014)......................10

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) ..............11

*Moss v. United States Secret Serv.*, 572 F.3d 962 (9th Cir. 2009) ...............5

*United States v. Kama,* 394 F.3d 1236 (9th Cir. 2005) ..........................17

i

## STATE CASES

*Animal Legal Defense Fund v. Mendes*, 160 Cal. App. 4th 136 (2008)...........16, 17

*Birkenfeld v. City of Berkeley*, 17 Cal.3d 129 (1976)................................................6

*City and County of San Francisco v. Regents of University of California*,
    7 Cal. 5th 536 (2019)........................................................................6

*Katzberg v. Regents of University of California,* 29 Cal.4th 300 (2002) ..............17

*Matter of Carniol v. New York City Taxi Limousine Comm'n*,
    975 N.Y.S.2d 842 (2017)..........................................................10

*Moradi-Shalal v. Fireman's Fund Ins. Companies,* 46 Cal.3d 287 (1988)...........17

*State Building & Construction Trades Council of California v. City of Vista*,
    54 Cal. 4th 547 (2012).................................................................6


## CONSTITUTIONAL PROVISIONS

United States Constitution, Fourth Amendment.......................................................8

United States Constitution, Tenth Amendment .......................................................5

Cal. Const., art. XI, § 5, subd. (a) ...........................................................................6

Cal. Const., art. XI, §7 .............................................................................................5

Cal. Const., art. I, section 13....................................................................................8


## STATUTES

42 U.S.C. §1983 ......................................................................................................17

Cal. Penal Code §1546..........................................................................14, 15, 16, 18

Cal. Penal Code §597t.............................................................................................16

Cal. Penal Code §690..................................................................................15, 16, 17

Cal. Penal Code. §1538.5........................................................................................16

Cal. Veh. Code §407.5 ..............................................................................................7

Cal. Veh. Code §21225..........................................................................................6, 7


## RULES

Fed. R. Evid. 201(b).................................................................................................7

## **LOCAL CODES**

Los Angeles Ordinance No. 187585…………………………………………………3

Los Angeles Municipal Code §71.29 .......................................................................7

35 RCNY §66-24 ......................................................................................................9

35 RCNY, §66-19 .....................................................................................................9

## **MISCELLANEOUS**

Los Angeles City Council File No. 19-1355…………………………………………3

Los Angeles City Council File No. 17-1125-S8…………………………...…….3

NOTICE OF MOTION AND MOTION TO DISMISS; MEMO OF POINTS AND AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs Justin Sanchez and Eric Alejo ("Plaintiffs") allege they rent and ride dockless electric scooters – owned by various third parties – on the public streets in Los Angeles.  As a condition of their temporary use of these electric scooters, Plaintiffs allow the scooter operators to collect and use reams of data, granting the operators permission to share Plaintiffs' data with third parties, including with the "government" for regulatory and other purposes.  In 2018, faced with what Plaintiffs admit was an "invasion" of a new, micro-mobility platform that Plaintiffs allege "cluttered city sidewalks, lacked safety features, and interfered with disabled access to city streets," the City of Los Angeles ("the City") directed its Department of Transportation to create a Shared Mobility Device Pilot Program in an effort to regulate the new platform.  One component of the Pilot Program, the Mobility Data Specification ("MDS"), consists of a data sharing structure in which scooter operators share _anonymized_ data with the City regarding scooter start and stop times, routes taken, and other data (with reporting time delays applied to address purported privacy concerns), all of which is critical to the City's regulatory efforts. Notwithstanding Plaintiffs voluntary agreement to allow the scooter operators to collect and share detailed information about each of them – including with the government – Plaintiffs now claim the data sharing requirements included in the City's Pilot Program amount to (1) an unreasonable search that violates the U.S. and California Constitutions, and (2) a violation California Penal Code §1546.1, _et seq._, (California's Electronic Communications Privacy Act (CalECPA)).

Plaintiffs' allegations of constitutional and criminal violations ring hollow for numerous reasons.  To begin with, the City's effort to regulate the public right of way falls squarely within its police powers, and is expressly sanctioned by state law.  More importantly, Plaintiffs simply have no valid expectation of privacy with respect to their scooter use on the public right of way, particularly given their voluntary agreement to allow the scooter operators to share their data with third parties.  Finally, Plaintiffs

cannot seek to enforce CalECPA, a state statute found within Criminal Procedure Part of the Penal Code, and one whose available remedies consist of exclusionary orders in criminal proceedings.

In light of the above, Defendant City of Los Angeles (and its erroneously named Department of Transportation) respectfully request that this Court dismiss Plaintiffs' complaint.

## II.   STATEMENT OF RELEVANT FACTS

### A.   The Invasion Of Dockless Mobility Devices

In or about 2017, the City of Los Angeles ("City"), like many cities throughout the state, experienced an "invasion of motorized electric scooters on city sidewalks."[2] Complaint ("Cmplt."), ¶1.  These dockless scooters are owned and maintained by private companies, and individual customers _rent_ the dockless scooters via smartphone applications.  Cmplt., ¶17 (emphasis added).  These rental customers, like Plaintiffs, begin rides wherever a dockless scooter is located (and end their ride where they desire) by using the dockless scooter companies' mobile application to terminate the rental. Cmplt. ¶17.  Plaintiffs concede that upon their "invasion" the dockless scooters "cluttered city sidewalks, lacked safety features, and interfered with disabled access to city streets."  Cmplt., ¶2.  The dockless scooter companies did little to address the complaints, and instead "aggressively [pushed] back against [the "City's] attempts to regulate the vehicles."  Cmplt., ¶2.

### B.   The Need To Regulate The New Mobility Device Platform

Like many cities across the country attempting to address the dockless scooter invasion, the City took steps to properly regulate this new shared mobility platform.  On September 28, 2018, the Los Angeles City Council passed an ordinance requiring the Los Angeles Department of Transportation ("LADOT") to implement a "Shared Mobility Device Pilot Program" that would, among other things, establish an application process for the approval of City-issued permits to operators or dockless bicycles, electric

---

[2] The "motorized electric scooters" are hereinafter referred to as "dockless scooters."

bicycles, motorized scooters, and electric scooters."  Cmplt., ¶19; Request for Judicial Notice ("RFN"), Exh. "A" (Los Angeles Ordinance No. 185785 adding section 71.29 to the Los Angeles Municipal Code, Added by Ord. No. 185,785, Eff. 10/5/18).  The ordinance required that "an operator of a shared mobility device shall obtain a permit from [LADOT] and comply with all Department permit rules, regulations, indemnification, insurance and fee requirements."  Cmplt., ¶19.

### C. **LADOT's Shared Mobility Device Pilot Program**

Acting in compliance with Ordinance No. 185785, LADOT created a permitting program via an application and review process.  Cmplt., ¶ 19; RJN, Exh. "B" (LADOT Dockless On-Demand Personal Mobility One-Year Permit).  The permit application requires the applicant companies to detail their intended dockless scooter deployment and agree to a number of regulatory requirements.  Cmplt. ¶20; RJN, Exh. "B" at p. 12. Central to Plaintiffs' complaint here, LADOT also sought to address this new mobility technology – and its effect on the public right of way – with technology itself.  Cmplt., ¶3. As a part of its effort, LADOT developed an information sharing system known as Mobility Data Specification ("MDS"); a tool that allows LADOT to receive data from permitted dockless scooter companies to enable LADOT to actively manage private mobility providers and the public right of way.  Cmplt., ¶23.

MDS requires scooter operators wishing to engage in business in Los Angeles to provide anonymized data about each vehicle and trip taken in Los Angeles.  Cmplt., ¶3. MDS's purpose is "to accelerate information collection by cities and counties facing an increase in the volume of permitting associated with dockless scooters." Cmplt., ¶24. MDS's goal is "to provide a standardized way for municipalities of other _regulatory_ agencies to ingest, compare and analyze data from _mobility_ service providers, and to give municipalities the ability to express _regulation_ in machine-readable formats … MDS is a key piece of digital infrastructure that supports the effective implementation of mobility policies in cities around the world."  Cmplt., ¶24 (emphasis added).  Critically important here, MDS does not collect any information directly identifying the rider of a particular

1  vehicle.  Cmplt., ¶¶4, 26.  As a result, Plaintiffs' complaint centers on the mere
2  possibility that they might be identified based on some coupling of the admittedly
3  anonymized MDS data with "just one other dataset" including "physical observation of a
4  rider."  Cmplt., ¶¶4, 26.  To be clear, Plaintiff alleges that such identification could take
5  place, but only if coupled with public or otherwise available data.  Cmplt., ¶¶4, 26.

6      **D.**    **LADOT Creates Data Protection Principles To Safeguard Data Shared**
7              **By Dockless Scooter Operators**

8      In their complaint, Plaintiffs' reference Motion No. 19-1355 (November 1, 2019)
9  regarding the Los Angeles City Council's instructions to LADOT to report back to City
10  Council with respect to the collection and use of data required by MDS, as well as
11  certain other data-related issues.  RJN, Exh. "C," "D," "E," and "F" (Council File No.
12  19-1355 includes, among other things, Councilmember Ryu's Motion (Motion No. 19-
13  1355 [RJN Exh. "C"]), the June 14, 2020 LADOT Report [RJN Exh. "D"], the
14  Transportation Committee's June 24, 2020 Report to Council,[3] [RJN, Exh. "E"], and
15  Council's July 1, 2020 approval of the Transportation Committee's Report to Council
16  [RJN Exh. "F"]).

17      Important here, Motion No. 19-1355 references LADOT's Data Protection
18  Principles, which are themselves included in Council File No. 17-1125-S8.  RJN, Exh.
19  "G" (Council File No. 17-1125-S8 – August 15, 2019 Los Angeles Department of
20  Transportation Memorandum to City Council attaching April 12, 2019 Data Protection
21  Principles).  The Data Protection Principles were developed to safeguard individual
22  privacy while supporting the City's efforts to promote a transportation system free from
23  discrimination and the exploitation of personal mobility data.  RJN, Exh. "G" at pp. 123-
24  125.  These Principles confirm that MDS process *vehicle* data, not *individual* data, and
25  further, that the City (1) categorizes MDS data as "Confidential Information" such that it
26  is exempt from release under the California Public Records Act; (2) minimizes data sets
27  solely to meet operational and safety needs; and (3) prohibits sharing data with law

28  _____
[3] The Committee's Report incorrectly references "June 12, 2020," rather than "June 14,
2020" as the date of LADOT's Report.

enforcement.  RJN, Exh. "G" (April 12, 2019 LADOT Memorandum) at pp. 123-124, §§ 1, 2, and 3.

To be clear, the City's Data Protection Principles confirm that law enforcement agencies are not permitted access to MDS data through the following language:

> Law enforcement and other government agencies, whether local, state, or federal <u>will not have access</u> to raw trip data other than as required by law, such as a court order, subpoena, or other legal process.  To be clear, the City will make no data available to law enforcement agencies through this process that is not already available to them from Operators now.  RJN, Exh. "G" (April 12, 2019 LADOT Memorandum) at p. 124, §3(a).

Thus, not only is Plaintiffs' personal information not shared through MDS, the anonymized data that is shared with LADOT is safeguarded from disclosure to third parties, including law enforcement agencies.

## III.   LEGAL STANDARD

A complaint may be dismissed for failure to state a claim under Rule 12(b)(6) where the factual allegations do not raise the right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007); *see also Moss v. United States Secret Serv.*, 572 F.3d 962 (9th Cir. 2009) ("for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.").  While the court assumes that well-pleaded factual allegations are true, the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004) (citation omitted).

## IV.   LEGAL ARGUMENT

### A.   Dockless Scooter Regulations Fall Under The City's Police Powers

The Tenth Amendment of the United States Constitution and California Constitution art. XI, §7 confers upon all cities the power to make/enforce within their

limits all local, police, sanitary, and other ordinances not in conflict with general laws. *Birkenfeld v. City of Berkeley*, 17 Cal.3d 129, 140 (1976).  Charter cities, like the City, have even greater authority: they have exclusive power to legislate over "municipal affairs." Cal. Const., art. XI, § 5, subd. (a); *City and County of San Francisco v. Regents of University of California*, 7 Cal. 5th 536, 544-545 (2019); *State Building & Construction Trades Council of California v. City of Vista*, 54 Cal. 4th 547, 555-556 (2012).

A municipality like the City of Los Angeles, therefore, has general police powers to regulate local transportation matters involving the public right of way, including novel platforms like dockless scooters.  Moreover, California Vehicle Code section 21225 expressly allows the City to regulate the registration, parking, and operation of motorized scooters on pedestrian and bicycle facilities as well as local streets and highways:

> This article does not prevent a local authority, by ordinance, from regulating the registration of motorized scooters and the parking and operation of motorized scooters on pedestrian or bicycle facilities and local streets and highways, if that regulation is not in conflict with this code.  RJN, Exh. "H" (Cal. Veh. Code §21225).

The dockless scooters at issue in this case fall squarely within the Vehicle Code's definition of "motorized scooters" for which local authorities are expressly permitted to regulate:

> (a) A "motorized scooter" is any two-wheeled device that has handlebars, has a floorboard that is designed to be stood upon when riding, and is powered by an electric motor. This device may also have a driver seat that does not interfere with the ability of the rider to stand and ride and may also be designed to be powered by human propulsion. For purposes of this section, a motorcycle, as defined in Section 400, a motor-driven cycle, as defined in Section 405, or a motorized bicycle or moped, as defined in

6

1    Section 406, is not a motorized scooter.  RJN, Exh. "I" (Cal. Veh. Code
2    §407.5).
3        As Plaintiffs readily admit, the City has taken steps to address the "invasion" of
4    dockless scooters, and the complaints that followed soon after the dockless scooters
5    appeared.  Cmplt. ¶¶1, 2, 3.  In its effort to "regulat[e] the registration of motorized
6    scooters and the parking and operation of motorized scooters on pedestrian or bicycle
7    facilities and local streets and highways," the City amended its municipal code, adding
8    LAMC §71.29, which relates to the Regulation of Shared Mobility Devices, and reads as
9    follows:

10       The Department shall implement a Shared Mobility Device Pilot Program,
11       and issue a permit to qualified pilot program operator, as defined in the
12       Department's Rules and Guidelines, including, but not limited to, an
13       operator of a dockless bicycle, electric bicycle, motorized scooter and
14       electric scooter.  Under the Pilot Program, an operator of a shared mobility
15       device shall obtain a permit from the Department and comply with all
16       Department permit rules, regulations, indemnification, insurance and fee
17       requirements set forth in the Department's Rules and Guidelines.  Failure to
18       comply with the Department's Rules and Guidelines may result in the
19       suspension, revocation, or a reduction of the number of permits issued by
20       the Department to an operator.  The Department may amend its Rules and
21       Guidelines as necessary during the life of the Pilot Program.  RJN, Exh. "J"
22       (LAMC §71.29).

23       Judicial notice is requested under Fed. R. Evid. 201(b) that (1) the City of Los
24   Angeles is a charter city operating under the laws of the state of California, (2) Cal. Veh.
25   Code §21225 expressly allows for local authority regulation of motorized scooters with
26   respect to the parking and operation of the devices as well as their use on pedestrian or
27   bicycle facilities and local streets and highways, and (3) LAMC §71.29 addresses the
28   regulation of dockless scooters with the City's limits.

**B.   Plaintiffs' First And Second Claims Fail Because The City's Mobility Data Specification Does Not Violate Constitutional Rights**

**1.    This dispute is analyzed under Expectation of Privacy**

Plaintiffs' first and second claims should be dismissed because Plaintiffs cannot plausibly allege a deprivation of their Fourth Amendment rights (or analogous rights found in the California Constitution) based on the City's requirement that dockless scooter operators share certain anonymized location data pursuant to the City's permitting requirements.[4]  *See Capp v. City of San Diego*, 940 F.3d 1046, 1061 (9th Cir. 2019) (affirming dismissal of *Monell* claim where plaintiffs failed to plausibly plead a Fourth Amendment violation).

Although the Fourth Amendment's prohibition against unreasonable searches applies to the states through the Fourteenth Amendment, *Soldal v. Cook Cnty.* 506 U.S. 56, 61 (1992) (citation omitted), the Fourth Amendment does not proscribe all state-initiated searches and seizures; only those that are unreasonable.  *Florida v. Jimeno*, 500 U.S. 248, 250 (1991).  A search within the meaning of the Fourth Amendment occurs when the government trespasses on private property for the purpose of obtaining information, *United States v. Jones*, 565 U.S. 400, 404, (2012), or when it infringes on an individual's "reasonable expectation of privacy." *See Katz v. United States*, 389 U.S. 347, 351 (1967); *Maryland v. Macon*, 472 U.S. 463, 469 (1985); *see also Jones*, 565 U.S. 400, 409 ("the Katz reasonable-expectation-of-privacy test has been added to, not substituted for, the common-law trespassory test").[5]

As demonstrated by the above authority, the touchstone of the Fourth Amendment

---

[4] The Fourth Amendment to the United States Constitution and article I, section 13, of the California Constitution extend similar protection against "unreasonable searches and seizures" and are therefore treated collectively in the instant motion.  *In re Lance W.*, 37 Cal. 3d 873, 881 (1985).

[5] Plaintiffs make no allegation of the City "touching" their property, nor do they allege – because they cannot – that MDS has anything to do with law enforcement.  Given these pleading admissions by omission, Plaintiffs' citation to *Jones* and *Carpenter*, both dealing with law enforcement efforts falling under a trespass analytical framework, are inapposite.  Cmplt., ¶¶ 7, 9.  This data sharing matter is more in alignment with *Apt. Assoc. of Greater L.A. v. City of Los Angeles*, 2019 U.S. Dist. LEXIS 191234 (C.D. Cal. 2019).

analysis is whether a person has a constitutionally protected reasonable expectation of privacy." *California v. Ciraolo*, 476 U.S. 207, 211 (1986) (quoting *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring)).  To show a reasonable expectation of privacy, a court must inquire (1) whether a person has a "subjective expectation of privacy in the object of the challenged search," and (2) whether that expectation is recognized as reasonable by society.  *Id.*

Notably, when analyzing a facial challenge alleging unlawful searches/seizures, "[t]he cardinal principle of statutory construction is to save and not to destroy."  *NRLB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 20 (1937).  The United States Supreme Court has long recognized the validity of "suspicionless searches where the program was designed to serve 'special needs, beyond the normal need for law enforcement."  *City of Indianapolis v. Edmond*, 513 U.S. 32, 37 (2000); *see also New York v. Burger*, 482 U.S. 691, 702-704 (1987) (upholding administrative inspections of 'closely regulated' business as an exception to the warrant requirement)).

Although the disruptive mobility platform at issue in this case, i.e., dockless scooters, has been examined by few courts to date, authority developed in closely related business areas is instructive.  One such example of a 'closely regulated business' is the taxi industry, which like dockless scooters, provides customers with transportation services on the public right of way.

Approximately thirteen years ago, the New York City Taxi and Limousine Commission ("TLC") implemented regulations requiring all taxi cabs in the city to install a "technology systems" that collects and transmits "Trip Data" and requires that data to be shared with the TLC.  (RJN, Exh. "K" (35 Rules of the City of New York ("RCNY"), §66-19).  Specifically, TLC regulations obligate taxis to "transmit Trip Data to the [TLC] using the frequency, method, and naming convention defined by the Commission."  *Id.*  The regulations require more than one dozen data points to be shared, including the "date, time, and location (latitude, longitude, and human-readable street address) of then pick-up and drop off."  *Id.*; RJN, Exh. "L" (35 RCNY §66-24).  The

main distinguishing factor between the TLC's taxi data-sharing and the City's dockless data-sharing is that the TLC's requirements were imposed via regulation, while the City's requirements are conditions of a voluntary permit process.

On multiple occasions, both before the TLC regulations took effect in 2007 and in years thereafter, classes of taxi medallion owners and individual drivers have challenged these data sharing regulations as being violative of the Fourth Amendment. *See Bulgia v. New York City Taxi Limousine Comm'n*, 2007 U.S. Dist. LEXIS 94024 (S.D.N.Y. 2007); *Alexandre v. N.Y. City Taxi Limousine Comm'n*, 2007 U.S. Dist. LEXIS 73642 (S.D.N.Y. 2007); *El-Nahal v. Yassky*, 993 F. Supp. 2d 460 (S.D.N.Y. 2014); *Matter of Carniol v. New York City Taxi Limousine Comm'n*, 975 N.Y.S.2d 842 (2017). In each case, the courts have ruled in favor of the TLC, upholding the data sharing program and concluding that those who choose to participate in a heavily regulated industry, such as the taxicab industry, have a diminished expectation of privacy, particularly in information related to the goals of industry regulation. *See Matter of Carniol*, 975 N.Y.S.2d at p. 848. To be sure, this outcome is not limited to cases involving New York or its Taxi & Limousine Commission. *See Azam v. D.C. Taxicab Comm'n, 46 F. Supp. 3d. 38, 50-51* (D.D.C. 2014). In *Azam*, the court rejected plaintiffs' Fourth Amendment violation claims, finding taxi drivers were aware of the GPS system, the system was installed pursuant to regulations, and the taxicabs in which the system was installed were not truly private vehicles. *Azam*, 46 F.Supp.3d at 50

Notably, the above referenced courts went a step further, concluding that, even if the taxi driver could show a legitimate expectation of privacy in trip data gathered by the GPS device, which a driver cannot, any Fourth Amendment claim of privacy would be outweighed by the governmental interests articulated by the TCL. *See Alexandre*, 2007 US. Dist. LEXIS 73642, *33-35; *Matter of Carniol*, 975 N.Y.S.2d at 848. In short, Courts have repeatedly held the City of New York (acting through the TLC) has a substantial interest in promoting taxi customer service, taxicab ridership, and passenger and driver safety. *See Alexandre*, 2007 U.S. Dist. LEXIS 73642, *34. Here, the City has

similar legitimate interests in promoting public safety and ensuring efficient use of dockless devices operating in Los Angeles through the data-sharing about which Plaintiffs complain.

### 2.    Plaintiffs have no expectation of privacy with respect to the anonymized data at issue

Here, Plaintiffs allege a single section 1983 claim based on the following violations:  (1) Defendants' deployment of MDS violates Plaintiffs' right to be free from unreasonable search and seizure, as protected by the Fourth Amendment to the United States Constitution (Cmplt., ¶ 43); (2) Defendants' collection of vehicle and mobility location data is unreasonable, unconnected to any legitimate government interest, and occurs without any opportunity for administrative or judicial review pre-collection (Cmplt. ¶44); (3) Defendants unreasonably condition Plaintiffs' ability to ride dockless scooters on the disgorgement of otherwise protected location information (Cmplt. ¶45); and (4) Defendants retention of Plaintiffs' precise location data concerning movements constitutes a warrantless search under the Fourth Amendment. Cmplt. ¶ 46.

Plaintiffs concede the data required by MDS is anonymized, but allege in conclusory fashion that the data "likely allows riders to be identified." Cmplt., ¶4. Although not stated directly in their complaint, Plaintiffs expressly authorize, as a condition of using the dockless scooters, the sharing of data collected by the dockless scooter operators, including sharing with government entities for regulatory and other purposes.  RJN, Exh. "M" (Bird Rides, Inc. ("Bird") Privacy Policy); Exh. "N" (Neutron Holdings, Inc., doing business as Lime ("Lime") Privacy Policy), and "O" (Lyft, Inc. ("Lyft") Privacy Policy).[6]

Plaintiffs concede through their complaint that they are customers of and riders of

---

[6] The Court may and should incorporate these exhibits by reference.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018); *Tellabs, Inc. v. Makor Issues & Rights, Ltd*. 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007) (court must consider documents incorporated into the complaint by reference)).  Here, Plaintiffs allege that they "rent" the scooters from the operators; an activity governed by the Terms of Use and Privacy Policies to which the operators' customers must agree.  The terms governing Plaintiffs' rental are therefore subject to incorporation by reference.

NOTICE OF MOTION AND MOTION TO DISMISS; MEMO OF POINTS AND AUTHORITIES

the dockless scooters offered by the above referenced operators.  Cmplt., ¶¶ 13, 14.
Plaintiffs likewise acknowledge that dockless scooter riders must rent the scooters in or
der to use them.  Cmplt. ¶ 17.  Plaintiffs contract with the operators for the right to use
the dockless scooters, and Plaintiffs' agreements with the operators demonstrate beyond
question that Plaintiffs have no reasonable expectation of privacy with respect to the data
captures and shared by the operators.  RJN, Exhs. "M" through "O."  By way of
example, the following excerpts are taken from Lyft's Privacy Policy (RJN, Exh. "O"):

> **Lyft, Inc., Privacy Policy**:
>
> At Lyft our mission is to improve people's lives with the world's best
> transportation, providing a platform to help you get from point A to point
> B. To do that, we need to collect, use, and share some of your personal
> information. This Privacy Policy is meant to help you understand how Lyft
> does that and how to exercise the choices and rights you have in your
> information.
>
> *     *     *
>
> **2.  The Information We Collect**
>
> When you use the Lyft Platform, we collect the information you provide, usage
> information, and information about your device. We also collect information about
> you from other sources like third party services, and optional programs in which
> you participate, which we may combine with other information we have about
> you. Here are the types of information we collect about you:
>
> *     *     *
>
> **B.  Information We Collect When You Use the Lyft Platform**
>
> **Location Information**. Great rides start with an easy and accurate pickup. The
> Lyft Platform collects location information (including GPS and WiFi data)
> differently depending on your Lyft app settings and device permissions as well as
> whether you are using the platform as a Rider or Driver:
>
> • Riders: We collect your device's precise location when you open and use the

12

NOTICE OF MOTION AND MOTION TO DISMISS; MEMO OF POINTS AND AUTHORITIES

Lyft app, including while the app is running in the background from the time you request a ride until it ends. Lyft also tracks the precise location of scooters and e-bikes at all times.

\*     \*     \*

**Usage Information**. We collect information about your use of the Lyft Platform, including ride information like the date, time, destination, distance, route, payment, and whether you used a promotional or referral code. We also collect information about your interactions with the Lyft Platform like our apps and websites, including the pages and content you view and the dates and times of your use.

\*     \*     \*

**3. How We Use Your Information**

We use your personal information to:

\*     \*     \*

**Responding to Legal Proceedings and Requirements**. Sometimes the law, government entities, or other regulatory bodies impose demands and obligations on us with respect to the services we seek to provide. In such a circumstance, we may use your personal information to respond to those demands or obligations.

\*     \*     \*

**4.  How We Share Your Information**

We do not sell your personal information. To make the Lyft Platform work, we may need to share your personal information with other users, third parties, and service providers. This section explains when and why we share your information.

\*     \*     \*

**C.  For Legal Reasons and to Protect the Lyft Platform**

We may share your personal information in response to a legal obligation, or if we have determined that sharing your personal information is reasonably necessary or appropriate to:

- Comply with any applicable federal, state, or local law or regulation, civil, criminal or regulatory inquiry, investigation or legal process, or enforceable governmental request. RJN, Exh. "O" at 182-187 (Lyft Privacy Policy).

Although the above referenced Privacy Policy terms are specific to Lyft, Bird and Lime also require their customers, like Plaintiffs, to agree to analogous privacy policy terms as a condition of renting Bird and Lime's dockless scooters. RJN, Exh. "M" at 151, 157 (Bird Privacy Policy), and Exh. "N" at 173-175 (Lime Privacy Policy).

As such, Plaintiffs cannot validly allege an expectation of privacy necessary to pursue their claims based on violations of the U.S. and California Constitutions (i.e., their first and second claims for relief). Stated differently, Plaintiffs have not, and cannot, plausibly allege a deprivation of constitutional rights – federal or state – a based on the anonymized data the scooter companies agreed to provide to LADOT. Any suggestion of an expectation of privacy is vitiated by Plaintiffs' acknowledgment of, and agreement with, the scooter companies' own data capture and sharing practices (including for government *regulatory* purposes). Plaintiffs affirmatively chose to rent dockless scooters and affirmatively allowed the operators to share data to comply with, among other things, local regulation. When they chose to rent dockless scooters, they agreed with these sharing protocols.

**C.  Plaintiffs Third Claim Fails Because The California Electronic Communications Privacy Act Applies To Law Enforcement Activities And Plaintiffs Lack Standing To Pursue A Civil Action**

**1.  <u>CalECPA is a criminal statute with its primary remedies related to the exclusion of evidence in criminal matters</u>**

The California Electronic Communications Privacy Act ("CalECPA") is codified in sections 1546 to 1546.4, within Title 12 ("Special Proceedings of a Criminal Nature")

of Part 2 ("Of Criminal Procedure") of the Penal Code.  Cal. Penal Code §1546.  Due to this textual placement in the Criminal Procedure Part of the Penal Code, the scope of CalECPA is controlled by Penal Code section 690, which provides:

> The provisions of Part 2 … shall apply to all criminal actions and proceedings in all courts, except where jurisdictional limitations or the nature of specific provisions prevent, or special provision is made for particular courts or proceedings. Cal. Penal Code §690.

The plain language of section 690 makes clear that CalECPA, as a provision of Part 2 of the Penal Code, is limited in its application to "criminal actions and proceedings," and therefore subject to enforcement in this civil action.  *See People v. Smith*, 133 Cal.App.2d 777, 779-80 (stating that Penal Code Section 1004, specifying grounds for demurrer in criminal action, "is made applicable to municipal courts by section 690, Penal Code"); *Ex Parte Shaw*, 115 Cal.App. 753, 756-57 (stating section 690 does not confer jurisdiction on municipal court to conduct civil sanity proceedings because it is "not part of the criminal prosecution" for which section 690 "provides for uniformity of procedure in the several courts").  A dockless mobility permitting program with no criminal enforcement mechanism is not such a criminal action or proceeding to which CalECPA can or should apply.

Reading section 690 to limit CalECPA's application to criminal actions and proceedings also allows CalECPA to coexist harmoniously with administrative programs that involve the collection of "electronic device information" from private transportation companies.[7]  Courts presume the legislature is aware of administrative activity, and when the Legislature takes no action to correct such activity, courts take that silence as legislative acquiescence to the administrative action.  *See United States v. Rutherford*, 442 U.S. 544, 554 (1979) (in federal context expressing reluctance to disturb longstanding administrative policy that comports with the plain language, history, and

---

[7] For example, the California Public Utilities Commission collects "electronic device information" from ride sharing companies Uber and Lyft, as a condition of those companies operations on streets and highways in California.  See https://www.cpuc.ca.gov/General/aspx?id=3989.

1   prophylactic purpose of challenged act).

2       The plain language of CalECPA likewise demonstrates its inapplicability outside

3   of the criminal context.  Penal Code §1546.4 clearly outlines remedies only available in

4   a criminal proceeding:  (a) a motion to "suppress any electronic information obtained or

5   retained," made in accordance with Cal. Penal Code. §1538.5, which applies only in

6   criminal proceedings; and (c) authorization for an "individual whose information is

7   targeted by a warrant, order, or other legal process that is inconsistent with this chapter,"

8   to "petition the issuing court to void or modify the warrant, order, or process, or to order

9   the destruction of any information obtained in violation of [CalECPA]."  These remedial

10  provisions are clearly geared toward protecting defendants in criminal prosecutions, and

11  are entirely inapplicable to the permit program at issue in the instant litigation.

12              **2.      The plain language of CalECPA demonstrates that the**

13                    **Legislature intended there be no private right of action**

14      Even more telling, section 1546.4(b) make it abundantly clear that Plaintiffs lack

15  standing to bring a claim asserting violation of CalECPA in that it expressly limits who

16  may bring a civil claim:  The *Attorney General* may commence a civil action to compel

17  any government entity to comply with the provisions of this chapter. Cal. Penal Code

18  §1546.4(b) (emphasis added).

19      *Animal Legal Defense Fund v. Mendes*, 160 Cal. App. 4th 136 (2008) is

20  instructional on this point.  In *Mendes*, the court examined whether private groups,

21  "however well-intentioned," could enforce Cal. Penal Code §597t.  The court held as

22  follows:

23          The issue in a case such as this is primarily one of legislative intent. If the

24          Legislature intended a private right of action, that usually ends the inquiry.

25          If the Legislature intended there be no private right of action, that usually

26          ends the inquiry. If we determine the Legislature expressed no intent on the

27          matter either way, directly or impliedly, there is no private right of action

28          (*Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287,

16

305 [250 Cal. Rptr. 116, 758 P.2d 58] (Moradi-Shalal)), with the possible exception that compelling reasons of public policy might require judicial recognition of such a right. (See *id*. at pp. 304–305; see also *Katzberg v. Regents of University of California* (2002) 29 Cal.4th 300, 317 [127 Cal. Rptr. 2d 482, 58 P.3d 339] [considerations for judicial recognition of private right of action for constitutional violations].) *Mendes*, 160 Cal.App.4th at 142

Here, CalECPA expressly limits authority to bringing a civil action compelling compliance to the California Attorney General, and nothing in the statute evidences an intent to create a private right of action. As such, Plaintiffs' attempt to enforce CalECPA is simply improper.

### D. Plaintiffs Improperly Name The Los Angeles Department Of Transportation As A Defendant In Their Action

As part of their complaint, Plaintiffs name the Los Angeles Department of Transportation as a Party-Defendant to the action. 42 U.S.C. § 1983 permits suit against a "person" acting under the color of law, but while local governmental units such as cities or municipalities are considered "persons," municipal departments and sub-units are not. *Compare Will v. Michigan Dept. of State Police,* 491 U.S. 58, 70 (1989), *with United States v. Kama,* 394 F.3d 1236, 1239 (9th Cir. 2005) (holding municipal police departments are not considered "persons" within the meaning of 42 U.S.C§ 1983). Given the above, Plaintiffs' naming of the Los Angeles Department of Transportation is improper, and that municipal department should be dismissed from the matter.

## V. CONCLUSION

Plaintiffs Justin Sanchez and Eric Alejo decided to rent dockless scooters, a new micro-mobility platform, for travel on Los Angeles' public right of way. Before doing so, they agreed that the companies offering this new mode of travel could (a) capture data related to their use of the dockless scooters, and (b) share that data with third parties, including federal, state, or local authorities for regulatory and other

1  purposes.  By doing so, Plaintiffs demonstrated they had no reasonable expectation of

2  privacy for their travels on the public right of way; areas indisputably subject to

3  regulation by Defendant City of Los Angeles.  The City's state-sanctioned regulation of

4  Plaintiffs' mode of travel is permissible, including its receipt of anonymized trip data

5  from the dockless scooter companies, and nothing in the City's regulatory scheme

6  violates Plaintiffs' federal and/or state constitutional rights.  Likewise, nothing in that

7  regulatory scheme impacts or even implicates California's penal code section addressing

8  electronic communications.  For the foregoing reasons, the City respectfully requests that

9  this action be dismissed pursuant to Rule 12(b)(6).

10  Dated:   July 31, 2020                MICHAEL N. FEUER, City Attorney
11                                        KATHLEEN A. KENEALY, Chief Assistant City Attorney
12                                        SCOTT MARCUS, Senior Assistant City Attorney
                                          GABRIEL S. DERMER, Assistant City Attorney
13                                        JEFFREY L. GOSS, Deputy City Attorney

14

15                                        _____/s/ Jeffrey L. Goss_____

16                                        JEFFREY L. GOSS
                                          Deputy City Attorney
17                                        Attorneys for Defendant City of Los Angeles

18

19

20

21

22

23

24

25

26

27

28