UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 20-5044-DMG (AFMx) | Date | February 23, 2021 |
|---|---|---|---|
| Title | *Justin Sanchez, et al. v. Los Angeles Department of Transportation, et al.* | Page | 1 of 9 |

Present: The Honorable **DOLLY M. GEE, UNITED STATES DISTRICT JUDGE**

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE DEFENDANTS' MOTION TO DISMISS [18]**

Before the Court is the motion to dismiss ("MTD") brought by Defendants the City of Los Angeles and the Los Angeles Department of Transportation ("LADOT" and together, "the City"). [Doc. # 18.] The motion is fully briefed. [Doc. ## 23, 25.] For the reasons set forth below, the Court **GRANTS** the MTD.

**I.**
**FACTUAL AND PROCEDURAL BACKGROUND**

In late 2017, the streets of Los Angeles saw an "invasion" of motorized electric scooters. Compl. ¶ 1 [Doc. # 1]. Dispatched by technology companies, the scooters are designed to be rented by smartphone-equipped consumers for individual rides. The scooters are "dockless," meaning that when the trip is over, the rider simply leaves the scooter on the street or sidewalk where the trip ends. Another consumer who comes along can then rent it again. *Id.* at ¶¶ 1, 17. The scooters are outfitted with GPS trackers, which broadcast their locations to the proprietors and are used to track rides and charge consumers accordingly. *Id.* at ¶ 17.

Faced with this sudden and enormous disruption to the streetscape, the City began to regulate the industry. On September 28, 2018, the City Council passed an ordinance allowing scooter companies to apply for a permit to operate in the City, which requires that they comply with LADOT rules and regulations. *Id.* at ¶ 19; Def's Request for Judicial Notice ("RJN"), Ex. A ("Ordinance") [Doc. # 19-1].[1] The ordinance emphasizes the need for regulations "to prevent shared mobility devices from being illegally placed or parked on a sidewalk or on a public right-

---

[1] The Court **GRANTS** the City's RJN as to the Ordinance, both as a municipal ordinance that is not subject to reasonable dispute and as a document incorporated by reference in the Complaint. *See Tollis, Inc. v. Cty. of San Diego*, 505 F.3d 935, 938 n.1 (9th Cir. 2007); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). To the extent any documents attached to the RJN are not discussed herein, the Court **DENIES as moot** the RJN as to those documents because it need not consider them in reaching its conclusions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 20-5044-DMG (AFMx) | Date | February 23, 2021 |
| Title | *Justin Sanchez, et al. v. Los Angeles Department of Transportation, et al.* | Page | 2 of 9 |

of-way[,] . . . to accommodate a shared mobility device user's ability to travel safely[, and] . . . to create an enforceable framework for managing shared mobility services," among others. Ordinance at 2.² The Ordinance also notes the need for data collection "to ensure safe and equitable access, maintenance and operations, to determine proper fleet size in various locations within the City, and to fine tune and update the current rules and regulations in real time to ensure compliance with local and state laws, including the development of data programs to aid in enforcement, and to prevent the accumulation of devices on sidewalks or other public rights-of-way." *Id.* at 2-3.

One regulation requires scooter operating companies to hand over historical vehicle location and trip data to LADOT. Known as the Mobility Data Specification ("MDS"), the program compiles spatial and temporal data on each scooter's location as well as the start and end points and times of each ride, and the route the scooter takes. Compl. ¶¶ 3, 25. The data is accurate to within "a few dozen feet" of the precise location of the scooter. *Id.* at ¶ 30. The data is anonymous, and does not include any information directly linking the scooter or the trip to the individual rider. *Id.* at ¶ 26.

The purpose of MDS is to "actively manage private mobility providers and the public right-of-way." *Id.* at ¶ 23 (quoting "Mobility Data Specification: Information Briefing," Los Angeles Department of Transportation, https://ladot.io/wp-content/uploads/2018/12/Whatis-MDS-Cities.pdf, Oct. 31, 2018).

Plaintiffs Justin Sanchez and Eric Alejo ride dockless rental scooters in Los Angeles, including to "make trips from their homes to work, friends, businesses, and places of leisure." *Id.* at ¶ 8. On June 8, 2020, they sued the City, claiming that MDS violates their rights under the Fourth Amendment of the United States Constitution; Article I, Section 13 of the California Constitution; and the California Electronic Communications Privacy Act ("CalECPA"), Cal. Penal Code § 1546 *et seq*. See *id.*

///
///
///

---

² All page references herein are to page numbers inserted by the CM/ECF system.

| | | |
|---|---|---|
| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk KT |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 20-5044-DMG (AFMx) | Date | February 23, 2021 |
| Title | *Justin Sanchez, et al. v. Los Angeles Department of Transportation, et al.* | Page | 3 of 9 |

## II.
## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may seek to dismiss a complaint for failure to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a pleading need not contain "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id*. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating the sufficiency of a complaint, courts must accept all factual allegations as true. *Id.* (citing *Twombly*, 550 U.S. at 555). Legal conclusions, in contrast, are not entitled to the assumption of truth. *Id.*

## IV.
## DISCUSSION

### A. Constitutional Claims

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures."[3] The government violates the Fourth Amendment when it (a) conducts a search (b) that is unreasonable. *See Florida v. Jimeno*, 500 U.S. 248, 250 (1991) ("The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable.").

#### 1. MDS is not a search

A search occurs within the meaning of the Fourth Amendment when "the government violates a subjective expectation of privacy that society recognizes as reasonable." *Kyllo v.*

---

[3] Article I, Section 13 of the California Constitution also prohibits "unreasonable searches and seizures" and incorporates the same legal standards as the Fourth Amendment, so the Court discusses the two claims together. *See Sanchez v. County of San Diego*, 464 F.3d 916, 928–29 (9th Cir. 2006) ("[T]he right to be free from unreasonable searches under [Article I, Section 13] parallels the Fourth Amendment inquiry.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 20-5044-DMG (AFMx) | Date | February 23, 2021 |
|---|---|---|---|
| Title | *Justin Sanchez, et al. v. Los Angeles Department of Transportation, et al.* | Page | 4 of 9 |

*United States*, 533 U.S. 27, 33 (2001) (citing *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring)).[4]

Especially relevant here are two recent, landmark Supreme Court cases: *United States v. Jones*, 565 U.S. 400 (2012), and *Carpenter v. United States*, 138 S. Ct. 2206 (2018). In *Jones*, five justices held that a GPS tracker attached to a person's privately owned car and monitoring its movements for 28 straight days impinged on a reasonable expectation of privacy because "GPS monitoring generates a precise, comprehensive record of a person's public movements that reflects a wealth of detail about her familial, political, professional, religious, and sexual associations."  565 U.S. at 415 (Sotomayor, J., concurring); *id.* at 430 ("[S]ociety's expectation has been that law enforcement agents and others would not—and indeed, in the main, simply could not—secretly monitor and catalogue every single movement of an individual's car for a very long period.") (Alito, J., concurring).

In *Carpenter*, the Court held that collecting historical cell site location information ("CSLI") violated a reasonable expectation of privacy because "[m]apping a cell phone's location over the course of 127 days provides an all-encompassing record of the holder's whereabouts." 138 S. Ct. at 2217. Significantly, the collection of CSLI constituted a search even though the data was obtained from a third party—the network carrier—because of "the unique nature of cell phone records."  *Id.*

While there are some clear similarities between *Jones* and *Carpenter* and this case—the vehicle location data, the third-party carrier—there are also important distinctions. Most apparent is the fact that here the MDS data is anonymous. Obviously, a person does not have a reasonable expectation of privacy over information that cannot even be connected to her. Plaintiffs allege, however, that location data can be readily de-anonymized. Compl. ¶¶ 26-28. They back up this assertion by citing to academic studies. *See id.* at ¶ 28 n. 4 ("[I]n a dataset where the location of an individual is specified hourly, and with a spatial resolution equal to that given by the carrier's antennas, four spatio-temporal points are enough to uniquely identify 95% of the individuals.") (quoting Yves-Alexandre de Montjoye, et al., *Unique in the Crowd: The privacy bounds of human mobility*, 3 Nature Scientific Reports 1376 (2013), http://www.nature.com/articles/srep01376).  The allegation is not purely conclusory and rises to the level of plausibility, so the Court must accept it as true at this stage.

The MDS data is not merely anonymous, however. It is linked only to the scooter, which is *shared* and by its nature used by a person only for the duration of a single ride. Each ride is

---

[4] A search also occurs when the government trespasses onto private property for the purpose of obtaining information, *United States v. Jones*, 565 U.S. 400, 404-05 (2012), which does not apply here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 20-5044-DMG (AFMx) | Date | February 23, 2021 |
| Title | *Justin Sanchez, et al. v. Los Angeles Department of Transportation, et al.* | Page | 5 of 9 |

disassociated from other rides the user may have purchased. De-anonymizing one location data point would therefore reveal only a sole trip that a person took from point A to point B, along with the route that she took. The *Jones* Court made clear that "relatively short-term monitoring of a person's movements on public streets accords with expectations of privacy that our society has recognized as reasonable." 565 U.S. at 430 (Alito, J., concurring). Only when the location tracking is so pervasive that it "catalogue[s] every single movement of an individual's car for a very long period" does it become a search. *Id.* In order for MDS to be a search, the City must be able to not only de-anonymize one trip, but also identify and compile *all* the trips that Plaintiffs took on scooters, from all the various providers they allege to have used, despite the fact that they are completely untethered from each other within the data set.[5]

Even if Plaintiffs could adequately allege the feasibility of this data disaggregation,[6] their claim would still be barred as a matter of law by the "third-party doctrine," under which "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Carpenter*, 138 S. Ct. at 2216 (quoting *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979)). Here, scooter users knowingly and voluntarily provide their location to the scooter company while riding and when they start and stop their trip—GPS tracking of the scooters is fundamental to how the service works.[7] *See* Compl. ¶ 18.

In *Carpenter*, the Supreme Court carved out an exception to the third-party doctrine for cell phone location data. *Id.* at 2217. The *Carpenter* Court emphasized, however, that its holding was "a narrow one." *Id.* at 2220. The Court held that CSLI is different in kind from the

---

[5] This also assumes that Plaintiffs use rental scooter services for transportation to the same degree as the Supreme Court imagined one uses a privately-owned car, which is far from a foregone conclusion.

[6] It is worth noting that even if it were possible to create such a comprehensive record of an individual's movements from the MDS data, it would likely be an enormously resource- and/or time-intensive project. Plaintiffs tacitly acknowledge this, suggesting that the only impediment to the City de-anonymizing the data is "merely time." Opp. at 15. But time is not irrelevant to the Fourth Amendment analysis. Critical to the holding in *Jones* was that the GPS tracking was relatively cheap and easy, and therefore meaningfully different from traditional surveillance. *Id.* at 429 ("In the precomputer age, the greatest protections of privacy were neither constitutional nor statutory, but practical."); *see also Carpenter*, 138 S. Ct. at 2217-18 ("[C]ell phone tracking is remarkably easy, cheap, and efficient compared to traditional investigative tools.").

[7] For this discussion, the Court does not rely on the companies' privacy policies, of which the City requests that the Court take judicial notice. *See* RJN, Ex. M, N, and O. The privacy policies are not incorporated by reference in the Complaint and their authenticity is subject to dispute, so the Court **DENIES** the RJN as to these documents. Nonetheless, it is clear from the allegations in the Complaint that consumers know (or reasonably should know) that the scooter company tracks their location while they ride—otherwise, the company would not know where to locate a scooter at the end point of a ride or how much to charge for the ride, and the next customer would not be able to locate the scooter via the app.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 20-5044-DMG (AFMx) | Date | February 23, 2021 |
| Title | *Justin Sanchez, et al. v. Los Angeles Department of Transportation, et al.* | Page | 6 of 9 |

types of information at issue in prior third-party doctrine cases because it reveals "a detailed chronicle of a person's physical presence compiled every day, every moment, over several years." Also, carrying a cell phone is "indispensable to participation in modern society," such that "in no meaningful sense does the user voluntarily 'assume[] the risk' of turning over a comprehensive dossier of his physical movements." *Id.* (quoting *Smith*, 442 U.S. at 745).

In this way, a rental scooter is not analogous to a cell phone. Riding a one-time rental scooter is not indispensable to modern life. *Cf. Naperville Smart Meter Awareness v. City of Naperville*, 900 F.3d 521, 527 (7th Cir. 2018) ("[A] home occupant does not assume the risk of near constant monitoring [of her electricity usage] by choosing to have electricity in her home."). Scooter users' locations are tracked only for so long as they ride the scooter. Location tracking is not an incidental and unanticipated bug, but an obvious, core design feature of the service. When someone chooses to use a rental scooter service for transportation, she assumes the risk that a technology company will be tracking her location for so long as she rides a scooter belonging to that company.

It is true that modern technology and "big data" have brought renewed scrutiny to the third-party doctrine in recent years. *See Jones*, 565 U.S. at 417 ("[I]t may be necessary to reconsider the premise that an individual has no reasonable expectation of privacy in information voluntarily disclosed to third parties.") (Sotomayor, J., concurring). But this case is not a difficult or problematic application of the existing doctrine, the size of the data collection notwithstanding. The disclosure here is even more knowing and voluntary than in *Smith v. Maryland* and *United States v. Miller*, the two cases from the 1970s that established the third-party doctrine. *Smith* involved a "pen register" tracking the phone numbers that a caller dialed, 442 U.S. at 742-45, and *Miller* dealt with bank transaction records, 425 U.S. 435, 442-43 (1976). Viewed retrospectively through the framing of *Carpenter*, a telephone and a checking account are far more essential to modern life (or at least were to life in the 1970s) than rental scooters are today. And the phone company or the bank tracking a person's numbers dialed or bank account withdrawal history is less obvious, apparent, and inherent than a GPS-based mobility service tracking a rental scooter's location.

In other words, even though MDS would not be possible without modern technology, it is far from the type of case that the *Carpenter* Court or Justice Sotomayor in *Jones* feared could result from an anachronistic application of the third-party doctrine. *See, e.g.*, *Jones*, 565 U.S. at 418 ("I for one doubt that people would accept without complaint the warrantless disclosure to the government of a list of every Web site they had visited in the last week, or month, or year.") (Sotomayor, J., concurring). Rather, the MDS data is a classic example of information voluntarily disclosed to a third party, squarely within the ambit of *Smith* and *Miller*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 20-5044-DMG (AFMx) | Date | February 23, 2021 |
| Title | *Justin Sanchez, et al. v. Los Angeles Department of Transportation, et al.* | Page | 7 of 9 |

In sum, because Plaintiffs knowingly and voluntarily disclose their location to scooter companies whenever they ride a rental scooter, they do not have a reasonable expectation of privacy over the information.

**2.      Even if it is a search, MDS is reasonable**

A search can be reasonable—and thus constitutional—even without a warrant and probable cause "in the context of safety and administrative regulations" when there are "special needs, beyond the normal need for law enforcement." *Bd. of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie Cty. v. Earls*, 536 U.S. 822, 829 (2002). Plaintiffs agree that even if MDS is a search, it would be an administrative search. *See* Opp. at 21. The reasonableness of administrative searches depends on a balancing test, requiring the Court to weigh (1) "the nature of the privacy interest allegedly compromised" by the search, (2) "the character of the intrusion imposed" by the government, and (3) "the nature and immediacy of the government's concerns and the efficacy of the [search] in meeting them." *Id.* at 830-34.

Even if MDS is considered a search, it would pass the balancing test. The nature and character of the privacy intrusion would be, at the absolute most, knowledge of the places that Plaintiffs have traveled to on rental scooters in Los Angeles. The nature of this intrusion is limited by the factors discussed above—namely, that it would be difficult to actually effectuate the intrusion, and that the privacy interest is diminished by the consumer's voluntary and knowing choice to use a rental service that obviously depends on the use of GPS tracking.

Most importantly, the government's interests are legitimate and substantial. In Plaintiffs' own words, the introduction of dockless scooters to city streets amounted to nothing less than an "invasion." Compl. ¶ 1. At best, the scooters could "represent[] a novel and potentially useful form of transit," but at worst, they "clutter[] city sidewalks, lack[] safety features, and interfere[] with disabled access to city streets." The difference between these two outcomes, of course, is meaningful regulation. And smart, effective regulation of a completely novel industry requires robust data. *See Naperville*, 900 F.3d at 528-29 (city's interest in modernizing its electrical grid justified use of "smart meters" to collect granular electricity-consumption data, even though the data collection amounted to a search).

Plaintiffs argue that the City fails to articulate why its regulatory interests necessitate collecting such precise route data. Opp. at 24. While the Court has not taken judicial notice of the contents of the City's "Data Protection Principles," the veracity of which Plaintiffs challenge, it seems self-evident that understanding where scooters tend to transit and park would help the City determine how and where to adjust the rules of the road to accommodate them (or not accommodate them, as the case may be). There is no need to know the identity of the riders, but

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 20-5044-DMG (AFMx) | Date | February 23, 2021 |
|---|---|---|---|
| Title | *Justin Sanchez, et al. v. Los Angeles Department of Transportation, et al.* | Page | 8 of 9 |

knowing what streets they typically take, at what hours, and at what destinations they tend to stop would all be immensely useful for municipal authorities attempting to regulate the public right-of-way. That is all the information that MDS collects.[8]

In sum, MDS is not a search within the meaning of the Fourth Amendment. But even if it were a search, it would be an administrative search, not for law enforcement purposes, that is justified by its furtherance of legitimate government interests. The Court **GRANTS** the MTD as to the federal and state constitutional claims.

**B.     CalECPA Claim**

CalECPA prohibits "a government entity" from "compel[ing] the production of or access to electronic communication information from a service provider" except under limited circumstances. Cal. Pen. Code § 1546.1. It does not provide, however, Plaintiffs with a private right of action.

Plaintiffs purport to sue under Section 1546.4(c), which provides:

> An individual whose information is targeted by a warrant, order, or other legal process that is inconsistent with this chapter . . . may petition *the issuing court* to void or modify the warrant, order, or process, or to order the destruction of any information obtained in violation of this chapter . . . [emphasis added].

This Court is not the "issuing court" of any warrant, order, or process by which the City collects the MDS data. Section 1546.4(c) gives standing to a person whose information has been targeted pursuant to a court order, warrant, or process to challenge that order, warrant, or process

---

[8] Plaintiffs also claim that MDS is unreasonable because administrative searches still require an opportunity for pre-compliance review, citing *City of Los Angeles v. Patel*, 576 U.S. 409, 419 (2015). But the type of administrative search contemplated by *Patel* was an individual, targeted search, such as through an administrative subpoena, where "[t]he authority to make warrantless searches devolves almost unbridled discretion upon executive and administrative officers." *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 323 (1978). The Supreme Court has held that searches that are programmatic and uniform in application, without opportunity for discretion, are constitutional even absent any pre-compliance review so long as they serve a special need beyond ordinary law enforcement. *See City of Indianapolis v. Edmond*, 531 U.S. 32, 39 (2000) (discussing *Delaware v. Prouse*, 440 U.S. 648, 663 (1979)). MDS indiscriminately collects data from every scooter ride, without the opportunity for arbitrary discretion. *See* Compl. ¶ 7. Indeed, this *lessens* the constitutional concern, rather than heightens it. *See Edmond*, 531 U.S. at 39; *see also Earls* 536 U.S. at 837 ("A program of individualized suspicion might unfairly target members of unpopular groups."). Pre-compliance review makes no sense in a programmatic search, and in fact defeats the purpose. Accordingly, the Court need not decide whether dockless scooters are a "closely regulated industry" such that they are exempt from the pre-compliance review requirement for targeted, discretionary administrative searches.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-5044-DMG (AFMx)** | Date | February 23, 2021 |
|---|---|---|---|
| Title | ***Justin Sanchez, et al. v. Los Angeles Department of Transportation, et al.*** | Page | 9 of 9 |

before that same court *in the same proceeding*. It does not allow the person to initiate an entirely new civil action before another, unrelated tribunal.

By contrast, Section 1546.4(b) allows the Attorney General to "*commence a civil action* to compel any government entity to comply with the provisions of this chapter" (emphasis added). The language differs from subpart (c) because the Legislature intended a different meaning. If the Legislature wanted to allow an individual whose information has been targeted to "commence a civil action" to challenge the production, it could have grouped these individuals along with the Attorney General in bestowing that right in subpart (b). But it did not, and instead granted them a different right, employing different language, in a separate subsection.

Accordingly, the MTD is **GRANTED** as to the CalECPA claim.

## V.
## CONCLUSION

The Court recognizes Plaintiffs' concern with the unprecedented breadth and scope of the City's location data collection. But that alone does not mean it violates their constitutional or statutory privacy rights. This is an issue that may be more appropriately addressed as a matter of public policy, which is not for this Court to opine. Therefore, the City's MTD is **GRANTED** as to all claims.[9] A district court may dismiss a complaint without leave to amend if "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988) (citation and internal quotation marks omitted). Because the Court finds that amendment to add more facts would be futile, the action is **DISMISSED with prejudice**, without leave to amend.

**IT IS SO ORDERED**.

---

[9] Because the Court dismisses the entire action, it need not address the City's alternative argument that LADOT was improperly named as a defendant.

| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk KT |
|---|---|---|